NOTICE
Decision filed 09/12/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 220395-U

NO. 5-22-0395

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 16-CF-924 |
| | ) | |
| LEONDRE McCLENDON, | ) | Honorable |
| | ) | Robert B. Haida, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court.
Justices Welch and McHaney concurred in the judgment.

**ORDER**

¶ 1   *Held*:  The circuit court did not err in sentencing the defendant to an aggregate 65-year sentence with an opportunity for parole after the defendant serves 20 years. The defendant's sentence does not violate the Illinois proportionate penalties clause. The defendant has not demonstrated ineffective assistance of counsel.

¶ 2   The defendant, Leondre McClendon, was convicted after a jury trial of two counts of aggravated criminal sexual assault (720 ILCS 5/11-1.30(a)(1) (West 2016)), one count of criminal sexual assault (720 ILCS 5/11-1.20(a)(1) (West 2016)), one count of aggravated robbery (720 ILCS 5/18-1(b)(1) (West 2016)), one count of aggravated possession of a stolen motor vehicle (625 ILCS 5/4-103.2(a)(7)(A) (West 2016)), and one count of vehicular hijacking (720 ILCS 5/18-3(a) (West 2016)). The circuit court sentenced the defendant to an aggregate term of 80 years in the Illinois Department of Corrections (IDOC). The defendant filed a direct appeal claiming that

1

he was denied a fair trial and that under *Graham v. Florida*, 560 U.S. 48 (2010), and *People v. Buffer*, 2019 IL 122327, his 80-year *de facto* life sentence violated the eighth amendment. See *People v. McClendon*, 2021 IL App (5th) 190007-U. We affirmed the defendant's convictions but vacated his sentence and remanded this matter for a new sentencing hearing. The defendant was subsequently sentenced to an aggregate sentence of 65 years in the IDOC.

¶ 3     On appeal, the defendant claims that his 65-year *de facto* life sentence violates *Graham*, 560 U.S. 48, because he was a juvenile when the offenses occurred, and he was not provided with a meaningful opportunity for release based on demonstrated maturity and rehabilitation. The defendant also challenges the validity of section 5-4.5-115 of the Unified Code of Corrections (730 ILCS 5/5-4.5-115 (West 2022)), the "under-21 parole law." The defendant claims that his 65-year sentence violates Illinois's proportionate penalties clause, and his sentence was excessive considering the defendant's age, cognitive problems and lack of treatment, and rehabilitative potential. The defendant additionally claims that his counsel provided ineffective assistance during the sentencing hearing. For the following reasons, we affirm the decision of the circuit court.

¶ 4                          I. BACKGROUND

¶ 5     We previously recited the details of the defendant's conviction and original sentence in *McClendon*, 2021 IL App (5th) 190007-U. We, therefore, only discuss those facts and the procedural history that are relevant for this appeal.

¶ 6     In the evening of May 5, 2016, the 16-year-old defendant, his 14-year-old brother, and his 16-year-old cousin were walking in a residential area. The group decided to steal a car that had passed by and the three followed the driver, G.A., to her garage. According to G.A., the defendant held a "gun" to G.A.'s head and said, "Shut up or I'll shoot." He also put his hands down the back of her pants while he told the other two boys to get into and start the car. The defendant's cousin

2

testified at trial that the defendant had actually held a cell phone to G.A.'s head as though it was a gun. After the defendant's cousin and brother left with G.A.'s car, the defendant sexually assaulted G.A. in her garage.

¶ 7 The defendant testified at trial and admitted to committing the crimes of vehicular hijacking, aggravated possession of a stolen motor vehicle, and aggravated robbery. The defendant additionally testified that he had sex with G.A. and received oral sex. At the time of the incident, the defendant believed that G.A. had consented to the sex acts, and he denied threatening G.A. or holding his cell phone to her head, as if it were a gun.

¶ 8 The jury found the defendant guilty of vehicular hijacking, aggravated possession of a stolen motor vehicle, aggravated robbery, two counts of aggravated criminal sexual assault regarding the allegations of vaginal penetration and anal contact, and criminal sexual assault for the allegation of oral penetration.

¶ 9 Sentencing Hearing

¶ 10 The circuit court held a sentencing hearing on October 4, 2018. Tara Arthur-Bergman, a juvenile probation officer, testified on behalf of the State that the defendant was first placed on probation on October 9, 2015. The defendant's parents had either divorced or separated, and they both lived in Belleville, Illinois. The defendant's brother was on probation. Since the third grade, the defendant had received accommodations for a behavioral disability. Tara recommended that the defendant receive education services and referred the defendant for out-patient counseling services through Chestnut Health Systems. The defendant's mother was against counseling services and failed to enroll the defendant in the Mental Health Juvenile Justice Program.

¶ 11 Tara additionally testified that while the defendant was detained on a burglary offense in Madison County, he hit another detainee with a lunch tray. The defendant was released on April

3

6, 2016, and placed on electronic leg monitoring. Tara received notifications that the defendant had violated the monitoring program several times.

¶ 12    Rodney Wilson, a corrections officer at the St. Clair County jail, testified that he investigated incidents within the jail including an incident involving the defendant that occurred on August 11, 2018. Rodney reviewed the footage from the video surveillance of the defendant hitting a 59-year-old inmate from behind. The inmate went to the floor and curled into a fetal position while the defendant kicked him repeatedly. The defendant walked away, returned after a few minutes, and resumed kicking, and hitting, and stomping the inmate on the floor. At one point, the inmate had attempted to hide under a bunk bed and the defendant jabbed him with a broom.

¶ 13    The older inmate was hospitalized and suffered from four fractured vertebrae. The older inmate informed Rodney that the incident occurred because he wanted to make a trade with the defendant and had changed his mind. The defendant refused to be interviewed about the incident.

¶ 14    After Rodney's testimony concluded, G.A. presented a victim impact statement. The defense did not present testimony in mitigation. The defense submitted three psychological reports from Dr. Cuneo dated March 5, 2017, March 28, 2017, and April 2, 2018, and noted that the defendant's juvenile files contained an additional evaluation completed on September 10, 2015, by Cheryl Prost, M.S., a court psychologist who worked at the juvenile detention center. The initial report completed by Dr. Cuneo indicated that the defendant was functioning in the mild mentally retarded range of intelligence and had an IQ of 68. The defendant had the cognitive abilities of an 11-year-old, which "may have negatively impacted his inability to stay on task and impulsivity." Dr. Cuneo opined that the defendant was sane. The defendant knew that stealing a car and threatening a woman to have sex were wrong, and the defendant could have controlled his behavior. In the subsequent reports, Dr. Cuneo determined that the defendant was fit to stand trial.

4

Dr. Cuneo additionally considered an intellectual assessment by Cheryl Prost, M.S., where the defendant had scored a verbal IQ of 74, visual IQ of 71, and composite IQ of 73. Dr. Cuneo found that the defendant's IQ score of 68 was consistent with his prior intellectual assessment.

¶ 15    The State requested a sentence of 25 years for each count of aggravated criminal sexual assault, served consecutively, 10 years for criminal sexual assault, and 15 years for each count for robbery, hijacking, and aggravated possession of a stolen motor vehicle, to run concurrently with one another, but consecutively to the criminal sexual assault charges. A mandatory supervised release (MSR) of three years to natural life was also requested. The defendant would be 74 years old upon his eligibility for release and he would not necessarily receive a life sentence.

¶ 16    The State further argued factors in aggravation including that the defendant's conduct caused or threatened serious bodily and emotional harm, the defendant had a prior history of delinquency, and the requested sentence was necessary to deter others from committing the same crime. The State addressed that G.A. had testified to emotional and physical harm sustained because of the attack. Additionally, the defendant was serving juvenile probation at the time of the offense and had a pattern of committing robberies. The defendant violated probation by leaving home without permission while on the electronic monitor. While in custody, the defendant struck a detainee with a lunch tray, created "shank-type" objects, and seriously injured an inmate's back.

¶ 17    The State additionally argued that some court decisions prohibit *de facto* life sentences without parole for juveniles. However, the defendant could receive a long sentence after giving due consideration that the crimes were committed by a juvenile. The circuit court was required to consider additional factors in mitigation because the defendant was under 18 years old at the time of the commission of the offense. The defendant also had intellectual limitations and an attention

deficit disorder. Nevertheless, the State argued the defendant was a danger to society, had proven irretrievable depravity and permanent incorrigibility beyond the possibility of rehabilitation.

¶ 18    The defense argued that the defendant was 16 years old when he committed the offenses, and the circuit court was precluded from issuing a life sentence where the defendant was convicted of nonhomicide offenses. To avoid a life sentence, the defendant must be paroled or eligible for parole prior to reaching 64 years old. The defendant's mental state, unfitness, and limited cognitive abilities contributed to a lesser culpability. The defendant had an IQ of 68, was borderline mentally retarded, and was diagnosed with attention-deficit/hyperactivity disorder (ADHD). He had behavior issues in school because of having ADHD and was placed in specialized classes in third grade. The defendant's ADHD attributed to his behavior while jailed because he had low impulse and low frustration tolerance. Medication would have assisted with controlling his frustration tolerance and would increase the likelihood of rehabilitation. The defendant was subjected to familial pressure because his parents were separated. The defendant's parole officer saw the defendant's potential for rehabilitation. Although the defendant was found fit to stand trial, he did not have the same level of understanding of the proceedings as an adult.

¶ 19    The defense argued that the offenses committed by the defendant were not separate offenses and counts 4, 5, and 6 should run concurrently. The victim had suffered emotional trauma, but no weapon was used and there was no physical injury other than penetration. The defense requested a sentence of 16 years. The defendant declined to make a statement of allocution.

¶ 20    The circuit court considered the victim impact statement, the three psychological evaluations, and a report by Cheryl Prost, M.S., dated September 24, 2015. The circuit court also considered that the defendant was under the age of 18 when he committed the offenses and the provisions of section 5-4.5-105 of the Unified Code of Corrections (730 ILCS 5/5-4.5-105 (West

2022)) applied for sentencing individuals under 18 years old. The defendant was raised in an environment without significant parental guidance. The defendant's age, impetuosity, level of maturity, and his ability to consider the consequences of his criminal conduct were specifically considered.

¶ 21 The circuit court found that the defendant's conduct caused physical and psychological harm; the defendant had a history of delinquency; the offenses occurred while he was serving probation; and the circuit court considered a sentence necessary to deter others from committing the same crime. The circuit court considered 140 years as the maximum sentence. The defendant was sentenced to 30 years in the IDOC on count 1, and 30 years in the IDOC on count 3, served consecutively to count 1. The defendant was sentenced to five years in the IDOC on count 2, served consecutively to counts 1 and 3. The defendant was additionally sentenced to five years in the IDOC on counts 4, 5, and 6, each served consecutively. The defendant's total sentence was 80 years followed by 3 years to natural life of MSR. The circuit court considered that the defendant would receive a parole date prior to his death.

¶ 22                                    Initial Appeal

¶ 23 The defendant appealed the sentencing decision. See *McClendon*, 2021 IL App (5th) 190007-U. On appeal, the defendant argued that his sentence was unconstitutional under *Graham* and *Buffer* because he received a *de facto* life sentence for nonhomicide offenses committed when he was 16 years old. The State conceded that the defendant received a *de facto* life sentence, and as imposed, the sentence did not provide for the possibility of parole. As such, the defendant's sentence was remanded for a new sentencing hearing.

7

¶ 24                              Resencing Hearing

¶ 25    The circuit court held a resentencing hearing on May 17, 2022. The parties jointly requested that the court take judicial notice of evidence in aggravation and mitigation as well as the victim impact statement presented during the initial sentencing hearing. An updated presentence investigation (PSI) was additionally submitted into evidence. The defendant was diagnosed with depression while incarcerated and was treated for depression, psychiatric issues, and back issues. According to the defendant's IDOC Disciplinary Tracking Inmate Disciplinary Card attached to the PSI, the defendant was disciplined for several incidents listed from May 30, 2019, through December 31, 2021, while incarcerated. No additional evidence, in aggravation or mitigation, was presented.

¶ 26    The State argued that the available sentencing range for the defendant was between 20 years to 140 years, followed by 3 years to natural life of MSR, and an 80-year sentence remained appropriate. The defendant's initial sentencing occurred prior to the Illinois Supreme Court decision that a sentence in excess of 40 years constitutes a *de facto* life sentence. See *Buffer*, 2019 IL 122327. The State argued that a *de facto* life sentence "without the possibility of parole is the problem." However, a sentence imposed at the resentencing hearing in excess of 40 years would afford the defendant the possibility of parole because the defendant would be able to request parole after serving 20 years of his 80-year sentence under a new parole statute for individuals under 21 years old. See 730 ILCS 5/5-4.5-115 (West 2022). The State requested the circuit court impose the same sentence as it imposed on October 17, 2018, based on the substantial evidence in aggravation.

¶ 27    Defense counsel agreed that section 5-4.5-115 of the Unified Code of Corrections (730 ILCS 5/5-4.5-115 (West 2022)) provided the defendant an opportunity for parole in 20 years. However, defense counsel argued that the defendant's aggregate sentence of 80 years for non-

homicide offenses committed when the defendant was 16 years old was a *de facto* life sentence prohibited by the eighth amendment. Although, there may be a case where sentencing a juvenile to 80 years would be acceptable, an 80-year sentence for the defendant in this case was not acceptable. Defense counsel argued for an aggregate sentence of less than 40 years.

¶ 28    The circuit court considered that the State had conceded on appeal that the defendant's 80-year sentence was a *de facto* life sentence, and the circuit court agreed that the defendant would have an opportunity for parole in 20 years. The 80-year sentence was found to be excessive. When determining the new sentence, the circuit court considered the evidence presented at the initial sentencing hearing in aggravation and mitigation, arguments from counsel, the provisions under section 5-4.5-115 of the Unified Code of Corrections, the defendant's age and level of maturity at the time of the offense, his relative ability to consider the nature and circumstances of his conduct, whether the defendant was subjected to outside pressure, background, his past efforts at rehabilitation, and the circumstances of the offense, as well as the defendant's conduct since he was incarcerated.

¶ 29    The defendant received a similar sentence of 30 years in the IDOC for count 1 and count 3, and 5 years for counts 2, 4, 5, and 6. However, the circuit court sentenced the defendant to 5 years in the IDOC on counts 4, 5, and 6, but ordered these sentences be served concurrently with the prior offenses, which modified the defendant's overall sentence to 65 years in the IDOC, with 3 to natural life of mandatory MSR. This appeal followed.

¶ 30                                II. ANALYSIS

¶ 31    On appeal, the defendant argues that his 65-year sentence violates *Graham*, which banned life terms for juvenile non-homicide offenders that do not provide a meaningful opportunity for release based on demonstrated maturity and rehabilitation; that the defendant's sentence violated

9

the Illinois proportionate penalties clause, as applied; and defense counsel provided ineffective assistance of counsel during the sentencing hearing.

¶ 32                                    Juvenile Parole Eligibility

¶ 33     The eighth amendment prohibits "cruel and unusual punishments." U.S. Const., amend. VIII. *Graham* "h[eld] that for a juvenile offender who did not commit homicide the Eighth Amendment forbids the sentence of life without parole." *Graham*, 560 U.S. at 74. A juvenile offender convicted of a nonhomicide crime is afforded some meaningful opportunity "to obtain release based on demonstrated maturity and rehabilitation," but a State is not required to guarantee eventual freedom. *Graham*, 560 U.S. at 75.

¶ 34     *Miller* extended the reasoning of *Graham* and held that imposing a mandatory life sentence without the possibility of parole on a juvenile offender without considering mitigating factors of youth, immaturity, and potential for rehabilitation violates the eighth amendment's prohibition on cruel and unusual punishments. *Miller v. Alabama*, 567 U.S. 460, 489 (2012). Subsequently, the Illinois Supreme Court held that a sentence for a juvenile offender is unconstitutional where "(1) the defendant was subject to a life sentence, mandatory or discretionary, natural or *de facto*, and (2) the sentencing court failed to consider youth and its attendant characteristics in imposing the sentence." *Buffer*, 2019 IL 122327, ¶ 27. The Illinois Supreme Court determined that a prison sentence greater than 40 years, imposed on a juvenile offender, is a *de facto* life sentence in violation of the eighth amendment. *Buffer*, 2019 IL 122327, ¶ 41.

¶ 35     "A State may remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them." *Montgomery v. Louisiana*, 577 U.S. 190, 212 (2016). After *Miller*, Illinois enacted legislation to extend parole eligibility to juvenile offenders to comply with *Miller*. *People v. Cavazos*, 2023 IL App (2d) 220066, ¶ 53. Offenders

10

under 21 years of age when the crime was committed and sentenced after June 1, 2019, are eligible for parole review under section 5-4.5-115 of the Unified Code of Corrections (730 ILCS 5/5-4.5-115 (West 2022)). A person serving a sentence for aggravated criminal sexual assault shall be eligible for parole review after serving 20 years or more of their sentence. 730 ILCS 5/5-4.5-115(b) (West 2022).

¶ 36    The defendant argues that his sentence was unconstitutional even though section 5-4.5-115(b) of the Unified Code of Corrections (730 ILCS 5/5-4.5-115(b) (West 2022)) applies because the parole statute does not provide a meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation. The defendant further argues that the limitations on parole opportunities fall outside of our country's evolving standards of decency and the parole rules conflict with *Miller*'s findings regarding juvenile culpability and rehabilitative potential. Specifically, the defendant argues that the parole law contradicts *Miller* in that it (1) offers only two distinct opportunities for parole, (2) does not require consideration of juvenile offenders' special characteristics, (3) prohibits parole for juvenile offenders committing "serious" crimes, and (4) fails to provide for judicial review of the parole review board's decisions for juvenile offenders serving life terms.

¶ 37    Generally, the circuit court's sentencing decision is reviewed for an abuse of discretion, but we review *de novo* issues of whether the sentencing court misapprehended applicable law. *People v. Cavazos*, 2023 IL App (2d) 220066, ¶ 33.

¶ 38    The State claims that forfeiture applies where the defendant failed to preserve the sentencing error argument by raising a contemporaneous objection and a written postsentencing motion. See *People v. Hillier*, 237 Ill. 2d 539, 544 (2010). The State additionally argues that the defendant failed to argue for plain error review. The defendant, however, addressed plain error

11

review in his reply brief, which is sufficient to allow us to review the issue for plain error. *People v. Ramsey*, 239 Ill. 2d 342, 412 (2010).

¶ 39    Under the plain-error rule, a defendant must first show that clear or obvious error occurred. *Hillier*, 237 Ill. 2d at 545. "In the sentencing context, a defendant must then show either that (1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing." *Hillier*, 237 Ill. 2d at 545.

¶ 40    In *Cavazos*, the defendant was 17 when he committed offenses for which he was sentenced to an aggregate of 75 years' imprisonment. *Cavazos*, 2023 IL App (2d) 220066, ¶ 1. In *Cavazos*, the defendant argued that the parole statute (730 ILCS 5/5-4.5-115 (West 2022)) does not provide a meaningful opportunity for release because the limitations on parole opportunities fall outside of our country's evolving standards of decency and the parole rules conflict with *Miller*'s findings regarding juvenile culpability and rehabilitative potential. *Cavazos*, 2023 IL App (2d) 220066, ¶ 50. The defendant in *Cavazos* further argued that the parole system did not provide a meaningful opportunity for release because it contradicts *Miller* where (1) only two distinct opportunities for parole are offered, (2) juvenile offenders' special characteristics are not required to be considered, (3) it mandates consideration of risk assessments which improperly treat juvenile-related mitigating factors as aggravating circumstances, and (4) it prohibits parole for juvenile offenders committing "serious" crimes, irrespective of their youth. *Cavazos*, 2023 IL App (2d) 220066, ¶ 50. *Cavazos* found that "[t]he new parole statute and procedures allow the Board to assess and weigh youth, its attendant circumstances, demonstrated maturity, rehabilitation, and *all* parole release factors in a manner or through a 'lens' compliant with *Graham* and *Miller*." (Emphasis in original.) *Cavazos*, 2023 IL App (2d) 220066, ¶ 59. Furthermore, "nothing in the new parole statute or procedures prevents the Board from applying and weighing relevant factors in a manner consistent

12

with the evolving authority concerning juvenile offenders, and, indeed, that is exactly what the legislature intended to do." *Cavazos*, 2023 IL App (2d) 220066, ¶ 59.

¶ 41 "[T]he availability of parole to a juvenile offender is a critical piece in assessing whether a 'life sentence' passes constitutional muster." *Cavazos*, 2023 IL App (2d) 220066, ¶ 41. The parole statute provides a juvenile defendant with "a meaningful opportunity for release based on his maturity and rehabilitation before a *de facto* life sentence of over 40 years' imprisonment," which is "all that is required of the eighth amendment and Illinois precedent." *People v. Beck*, 2021 IL App (5th) 200252, ¶ 26.

¶ 42 The defendant was sentenced to an aggregate 65-year term for nonhomicide offenses committed when the defendant was 16 years old. The defendant is eligible for parole review after serving 20 years. See 730 ILCS 5/5-4.5-115(b) (West 2022). As such, the parole statute affords the defendant a meaningful opportunity for release based on his maturity and rehabilitation before the defendant reaches a *de facto* life sentence. Therefore, the circuit court's sentencing decision was not in error and plain error review does not apply.

¶ 43                                Proportionate Penalties Clause

¶ 44 We next address whether the defendant's 65-year sentence violates the proportionate penalties clause, as applied. The defendant argues that his sentence violates the Illinois proportionate penalties clause where the defendant's culpability was diminished by his juvenile immaturity and impulsivity compounded by his mental health issues; the defendant was negatively influenced by his family and peers; the defendant had significant rehabilitative potential; and the defendant's 65-year sentence was extreme for nonhomicide offenses that occurred during a single incident.

13

¶ 45 The Illinois Constitution provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. To be meritorious on a claim of a proportionate penalties clause violation, "a defendant must show either that the penalty imposed is cruel, degrading, or so wholly disproportionate to the offense that it shocks the moral sense of the community; or that it differs from the penalty imposed for an offense containing the same elements." *People v. Klepper*, 234 Ill. 2d 337, 348 (2009). Whether a sentence violates the proportionate penalties clause is reviewed *de novo*. *Cavazos*, 2023 IL App (2d) 220066, ¶ 63.

¶ 46 Illinois enacted a statute for sentencing defendants under the age of 18 requiring the sentencing court to consider additional factors in mitigation. See 730 ILCS 5/5-4.5-105 (West 2022). Before sentencing a juvenile defendant, a sentencing court must consider the following factors in mitigation:

"(1) the person's age, impetuosity, and level of maturity at the time of the offense, including the ability to consider risks and consequences of behavior, and the presence of cognitive or developmental disability, or both, if any;

(2) whether the person was subjected to outside pressure, including peer pressure, familial pressure, or negative influences;

(3) the person's family, home environment, educational and social background, including any history of parental neglect, physical abuse, or other childhood trauma;

(4) the person's potential for rehabilitation or evidence of rehabilitation, or both;

(5) the circumstances of the offense;

(6) the person's degree of participation and specific role in the offense, including the level of planning by the defendant before the offense;

(7) whether the person was able to meaningfully participate in his or her defense;

(8) the person's prior juvenile or criminal history; and

14

(9) any other information the court finds relevant and reliable, including an expression of remorse, if appropriate. However, if the person, on advice of counsel chooses not to make a statement, the court shall not consider a lack of an expression of remorse as an aggravating factor." 730 ILCS 5/5-4.5-105(a) (West 2022).

¶ 47 The circuit court balances the goals of retribution and rehabilitation of the defendant and is given great discretion to sentence a defendant within the limits set by the legislature by statute. *People v. Haley*, 2011 IL App (1st) 093585, ¶ 63. "The legislature has the power to prescribe penalties for defined offenses, and that power necessarily includes the authority to prescribe mandatory sentences, even if such sentences restrict the judiciary's discretion in imposing sentences." *People v. Hilliard*, 2023 IL 128186, ¶ 21 (citing *People v. Huddleston*, 212 Ill. 2d 107, 129 (2004)). "The legislature's determination of a particular punishment for a crime in and of itself is an expression of the general moral ideas of the people." *Hilliard*, 2023 IL 128186, ¶ 38.

¶ 48 Aggravated criminal sexual assault is a Class X felony. 720 ILCS 5/11-1.30(d)(1) (West 2022). The sentencing range for a Class X felony is not less than 6 years and not more than 30 years. 730 ILCS 5/5-4.5-25(a) (West 2022). Criminal sexual assault, aggravated robbery, aggravated possession of a stolen motor vehicle, and vehicular hijacking are Class 1 felonies. See 720 ILCS 5/11-1.20(b)(1) (West 2022); 720 ILCS 5/18-1(c) (West 2022); 625 ILCS 5/4-103.2(b) (West 2022); and 720 ILCS 5/18-3(b) (West 2022). The sentencing range for a Class 1 felony is not less than 4 years and not more than 15 years. 730 ILCS 5/5-4.5-30(a) (West 2022). The court must impose consecutive sentences for convictions of criminal sexual assault and aggravated criminal sexual assault. 730 ILCS 5/5-8-4(d)(2) (West 2022).

¶ 49 The circuit court considered the provisions in the sentencing statute and weighed the special circumstances relating to the defendant's youth. Specifically, the circuit court considered the defendant's age, level of maturity at the time of the offense, relative ability to consider the nature of the circumstances of his conduct, whether he was subjected to outside pressure, and his

background as a child and growing up. The circuit court additionally considered past efforts at rehabilitation and the defendant's conduct since he was incarcerated.

¶ 50 The defendant received the statutory maximum of 30 years for the two counts of aggravated criminal sexual assault, and one year more than the minimum for the remaining counts. The defendant's sentence is within the applicable sentencing ranges for each of the offenses committed by the defendant. The circuit court used its discretion in imposing a lengthy sentence after considering the necessary factors pertaining to youth and sentenced the defendant within the appropriate sentencing ranges. Additionally, we cannot say that the sentences imposed were cruel, degrading, or so wholly disproportionate that they shocked the moral sense of the community. Therefore, the circuit court's overall sentence was not in violation of Illinois's proportionate penalties clause, as applied to the defendant, and his sentence was not excessive.

¶ 51                    Ineffective Assistance of Counsel

¶ 52 In determining whether a defendant was denied effective assistance of counsel, the defendant must demonstrate that counsel's performance was deficient where it fell below an objective standard of reasonableness, and the deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Ineffective assistance of counsel during a sentencing hearing occurs when "counsel's performance was below minimal professional standards and *** a reasonable probability exists that the sentence was affected." *People v. Orange*, 168 Ill. 2d 138, 168 (1995). Both prongs of the *Strickland* test must be satisfied by the defendant for a finding of ineffectiveness. *People v. Veach*, 2017 IL 120649, ¶ 30. We may determine whether the defendant was prejudiced before addressing whether defense counsel's performance was deficient. *People v. Cortes*, 181 Ill. 2d 249, 295-96 (1998). Ineffective assistance

of counsel claims are generally reviewed *de novo*. *People v. Gunn*, 2020 IL App (1st) 170542, ¶ 91.

¶ 53    Defense counsel has a duty to make a reasonable investigation for mitigation evidence or must have a sound reason for failing to investigate. *People v. Pulliam*, 206 Ill. 2d 218, 238 (2002). "To establish deficiency, the defendant must overcome the strong presumption that the challenged action or lack of action might have been the product of sound trial strategy." *People v. Griffin*, 178 Ill. 2d 65, 73-74 (1997). The defendant additionally must demonstrate prejudice based on counsel's failure to investigate mitigating evidence to sustain a claim of ineffective assistance of counsel. *Pulliam*, 206 Ill. 2d at 239.

¶ 54    The defendant claims that defense counsel failed to present evidence or arguments related to the defendant's youth or cognitive issues and failed to present an expert witness to explain how the defendant's undeveloped brain contributed to his criminal behavior. The defendant additionally claims that there was a reasonable probability that he would have received a lower sentence had defense counsel presented evidence in mitigation and the defendant's rehabilitative potential in the context of his youth.

¶ 55    During the resentencing hearing, the parties jointly requested that the circuit court take judicial notice of evidence in aggravation and mitigation as well the victim impact statement presented during the initial sentencing hearing. The circuit court considered Dr. Cuneo's reports which indicated that the defendant was in a mild mentally retarded range of intelligence with an IQ of 68 and that the defendant had the cognitive abilities of an 11-year-old, which "may have negatively impacted his inability to stay on task and impulsivity." The circuit court considered the testimony of the defendant's rehabilitative potential from the initial sentencing hearing which included the testimony from a juvenile probation officer.

17

¶ 56    The circuit court additionally considered an updated PSI which demonstrated that the defendant became more combative and defiant while incarcerated. The updated PSI addressed that while incarcerated the defendant was diagnosed for depression and treated for psychiatric issues. The defendant, nevertheless, continued to engage in offensive behavior and was disciplined for several incidents while incarcerated. We note that a defendant's prison disciplinary record may be reviewed by the court when determining the defendant's rehabilitative potential. See *People v. Willis*, 361 Ill. App. 3d 527, 531 (2005).

¶ 57    During the resentencing hearing, defense counsel objected to the State's position that the defendant should be sentenced again for an 80-year sentence where the defendant was eligible for parole after 20 years. Defense counsel argued that the extensive 80-year sentence was not acceptable in the defendant's case, maintained that a sentence greater than 40 years violated the eighth amendment, and requested an aggregate sentence of less than 40 years.

¶ 58    The circuit court considered the mitigating factors for offenders under 18 years old pursuant to section 5-4.5-105(a) of the Unified Code of Corrections (730 ILCS 5/5-4.5-105(a) (West 2022)). The defendant was originally sentenced to 80 years and was resentenced to a shorter prison term of 65 years. The defendant has not demonstrated prejudice by his defense counsel's performance where the circuit court reduced his sentence, and he was sentenced within the sentencing range.

¶ 59                                              III. CONCLUSION

¶ 60    For the foregoing reasons, the judgment of the circuit court of St. Clair County is affirmed.

¶ 61    Affirmed.